WILLIAM KILLEFER AND SUSAN S. BRIGGS, EXECUTORS, ETC., v. JOHN C. McLAIN ET AL.[1]

[See 54 Mich. 265.]

*Partnership—Firm assets—Real estate—Accounting.*

,Real estate owned in *severalty,* and agreed to be put into copartnership at time of its formation by the conveyance by each of the two partners to the other of an undivided half of the grantor's interest, which was done, and the property thereafter used for partnership purposes, constitutes firm assets for the payment of its debts.

Appeal from Van Buren. (Mills, J.) Argued May 2 and 3, 1888. Decided June 8, 1888.

Bill for partnership accounting. Defendants appeal. Final decree reversed, and case remanded for a further accounting on the basis of the interlocutory decree. The facts are stated in the opinion.

*Howard & Roos,* for complainants.

*Crane & Breck,* for defendants.

CHAMPLIN, J. On January 2, 1882, Emory O. Briggs and his son-in-law, Charles G. Nash, entered into copartnership under written articles to engage in and carry on the business of milling, buying and selling grain, and the manufacture and sale of flour and meal in all its varying and different forms; also in the buying of logs, stave and heading bolts, and timber of various kinds, and in the manufacture of staves

---

[1] For the final disposition of this case, see 44 N. W. Rep. ——.

and heading, and the sale thereof; buying, selling, dressing, and matching lumber of all kinds, including shingle and lath, and all and every description and variety thereof; also any other business in which the partners may jointly wish to engage. The firm name was agreed upon as Briggs & Nash.

Each of the parties at the time was the owner of real estate, which it was agreed should be put into the firm, and to accomplish this result each agreed to convey to the other an undivided one-half interest in such real estate by quitclaim deed, which was done. Each of the partners also put into the firm certain personal property, which was appraised by the partners. The recapitulation attached to the articles of copartnership showed the capital put in by each partner as follows:

| C. G. Nash | Real estate | $16,000 00 |
| | Personal estate | 8,229 94 |
| | | $24,229 94 |
| E. O. Briggs | Real estate | $16,000 00 |
| | Personal estate | 7,353 66 |
| | | $23,353 66 |

The Ditmar land put in by Nash was minuted as balanced by amount due for purchase debts by both parties as per schedule.

The articles of copartnership contained this clause:

"And, further, that said copartners, under this said name and firm, shall assume and pay certain debts respectively owed by each as mentioned and specified in a schedule thereof, hereto attached and made a part hereof, which said debts shall, to all intents and purposes, be deemed the first debts of said copartners."

The schedule of debts attached footed up against Nash at $20,597 77, and against Briggs, at $20,639.04, making a total of $41,236.81, and making the net capital, over debts, $6,346.79.

It appears that Nash, at this time, owed individual debts, not included in the schedule put into the firm, a note to F. E. Stevens for $1,150, bearing 8 per cent. interest; a note to A. Sherman for $544, drawing interest at 10 per cent.; and a note to W. J. Sellick for $528, bearing interest at the rate of 8 per cent.

Charles G. Nash died on August 6, 1882, which fact dissolved the partnership. On September 14, Emory O. Briggs was appointed administrator of the estate of C. G. Nash. An inventory was made and filed by the administrator. Commissioners on claims were appointed, and the only claims proved against the estate of C. G. Nash were those of Stevens, Sherman, and Sellick, above stated. Briggs continued the business in the firm name of Briggs & Nash until his death, which occurred February 4, 1885.

The complainants are his executors. They filed their bill for an accounting between them and the representatives of the deceased partner, Nash, with reference to the copartnership dealings and debts, and for a sale of the partnership assets to pay the debts of the firm, and for a division of the surplus, should there be any remaining. They claim that Briggs, in his life-time, paid all the firm debts, and that on an accounting a large sum would be found due to them, and that the estate of Emory O. Briggs is the only firm creditor.

The defendants, by their answer, deny any indebtedness, from the firm to E. O. Briggs, or to his estate; allege that, as administrator of the estate of Nash, he took into his possession a large amount of real and personal property belonging, in whole or in part, to Nash, and more than sufficient to pay his just and several obligations, and that said Briggs disposed thereof to his own use without rendering any account thereof to anybody; that he collected rents and profits which he has not accounted for.

The defendants Sellick, Stevens, and Sherman claim that

they are entitled to priority over the firm creditors of Briggs & Nash, and especially over Briggs or his estate as a creditor of said firm, and pray the benefit of a cross-bill.

It was referred to a commissioner to take and state an account. But no account has been stated, so far as appears from the record. The commissioner made a report of certain facts to the court, and some testimony was taken in open court. A decree was rendered, in which occurs the following:

"That said firm of Briggs & Nash were indebted to said Briggs at the time of his death, over and above all set-offs and counter-claims, in the sum of at least $9,000, and that said Briggs was the sole partnership creditor."

The decree also declares the several debts due to Stevens, Sellick, and Sherman, and that they were the individual debts of Nash at the time he entered into the partnership, and as such are entitled to priority of payment over the debt due the estate of E. O. Briggs out of the property put into said firm by Nash.

It directs a sale of the real estate remaining undisposed of, a portion of which was put into the firm by Briggs and a portion by Nash, and from the proceeds a sufficient amount is to be paid to the administrator of Nash to pay the individual debts above mentioned, and the balance is to be paid to complainants as executors of E. O. Briggs, and by them applied in paying the debts of Briggs & Nash, including the debt due to the Briggs estate, and, if any remain, to be divided equally between the estate of Nash and the estate of Briggs.

The record in this case is very unsatisfactory. As stated above, the case was referred to a circuit court commissioner to take and state an account.

He has not done so, and I am unable to find from the record any testimony which tends to prove that Briggs & Nash were indebted to Briggs at the time of the latter's death in the sum of at least $9,000, or that said Briggs was the sole partnership creditor.

It appears that there were no losses suffered by the firm of Briggs & Nash up to the time of Mr. Nash's death.

The schedule annexed to the partnership agreement shows that the total indebtedness of the partnership at the time it was launched was $41,236.81. And a statement annexed to the commissioner's report shows that the total indebtedness of the firm at the time of Mr. Nash's death was $34,891.70. Instead of closing up the partnership business as soon as practicable, Mr. Briggs continued to carry it on until his death, some three years after the dissolution; and the testimony is that it was carried on at a loss after Mr. Nash's death. He had the possession and use of all the property, real and personal, put into the firm, and his executors, the complainants, have since his death, which occurred in February, 1885. No allowance appears to have been made for these rents and profits.

The decree was right in holding that the whole of the real estate was put into the firm, and constitutes firm assets, for the payment of its debts, and also in holding that the individual creditors of Nash had priority as to payment over Briggs or his estate from the assets of the firm. The interlocutory decree was right, and will be left to stand. The final decree, however, must be reversed and set aside, and the cause remanded, and the proofs already taken may stand, and further proofs may be taken under the interlocutory decree, and an account must be taken and stated showing the assets and liabilities, the gains and losses, the receipts and disbursements, and how the account stood as between the partners at the time of the death of Mr. Nash, and also showing what debts have been paid by the surviving partner, and when paid, and what he has done with the assets of the firm. The decree rendered is too uncertain to be executed without a further accounting to show how much, if anything, is due from the firm of Briggs & Nash to Briggs, and how much is

due by the firm to Nash, if anything. The appellants will recover their costs in this Court.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.